# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| CARDIACSENSE LTD, | |
| Plaintiff, | |
| v. | Case No. 1:24-cv-01505-ADA |
| GOOGLE LLC | **JURY TRIAL DEMANDED** |
| Defendant. | |

## DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

# TABLE OF CONTENTS

Page

I.     GROUND #1: THE '998 PATENT IS INELIGIBLE UNDER 35 U.S.C. § 101. ........ 2

    A.     The Two-Step Legal Test For Patent Eligibility Under 35 U.S.C. § 101. .............. 2

    B.     The Asserted Claims Are Directed To Patent Ineligible Subject Matter Under 35 U.S.C. § 101. ................................................................................................................ 3

II.    GROUND #2: THE COURT SHOULD DISMISS CARDIACSENSE'S REQUEST FOR AN INJUNCTION. ................................................................................................. 15

    A.     The *Twombly/Iqbal* Pleading Standard. ................................................................ 15

    B.     CardiacSense Did Not Plead A Single Fact Supporting An Injunction. ............... 16

III.   GROUND #3: THE COURT SHOULD DISMISS CARDIACSENSE'S INDIRECT INFRINGEMENT CLAIMS. ....................................................................................... 18

    A.     Legal Standards For Pleading Indirect Infringement. ........................................... 18

    B.     CardiacSense Failed To Plausibly Allege Indirect Infringement. ........................ 18

IV.    GROUND #4: THE COURT SHOULD DISMISS CARDIACSENSE'S PRE-SUIT DAMAGES CLAIM. .................................................................................................... 20

V.     CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ............................................................................ *passim*

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) ...................................................................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................15

*Automated Tracking Solutions, LLC v. Coca-Cola Co.*,
723 F. App'x 989 (Fed. Cir. 2018) .............................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................15, 18

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ..................................................................13

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) .............................................................18, 20

*Cambridge Mobile Telematics, Inc. v. Zendrive, Inc.*,
No. 22-1260-RGA, 2003 WL 6295338 (D. Del. Sept. 27, 2023) .............10

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017) ....................................................................4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) ................................................................3, 4

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) ..................................................................18

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .............................................................................16, 17

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .......................................................... *passim*

*Express Mobile, Inc. v. Liquid Web, LLC*,
No. 1:18-CV-01177-RGA, 2019 WL 1596999 (D. Del. Apr. 15, 2019) ..............20

*Health Discovery Corp. v. Intel Corp.*,
    577 F. Supp. 3d 570 (W.D. Tex. 2021)..................................................................11

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
    839 F. App'x 534 (Fed. Cir. 2021) ...............................................................6, 7, 8, 13

*Inhale, Inc v. Gravitron, LLC*,
    No. 1-18-CV-762-LY, 2018 WL 7324886 (W.D. Tex. Dec. 10, 2018) ...............................19

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*,
    No. 1-14-CV-134-LY, 2015 WL 3513151 (W.D. Tex. Mar. 24, 2015) ...............................19

*Lionra Techs. Ltd. v. Apple Inc.*,
    No. 6:22-cv-351-ADA, 2023 WL 11915728 (W.D. Tex. May 10, 2023) ........................16, 17

*M & C Innovations, LLC v. Igloo Prods. Corp.*,
    No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) ................................16, 17

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
    566 U.S. 66 (2012).................................................................................................2

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
    No. 6:20-CV-008876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) .........................19

*Nintendo of Am., Inc. v. iLife Techs., Inc.*,
    IPR2015-00109, Paper No. 40 (PTAB 2016) .........................................................13

*Ortiz & Assocs. Consulting, LLC v. VIZIO, Inc.*,
    No. 3:23-CV-00791-N, 2023 WL 7184042 (N.D. Tex. Nov. 1, 2023) ...................................20

*Philips N. Am. LLC v. Fitbit LLC.*,
    626 F. Supp. 3d 292 (D. Mass. 2022) ...................................................................11

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018).......................................................................3, 13

*Specialized Monitoring Sols., LLC v. ADT LLC*,
    367 F. Supp. 3d 575 (E.D. Tex. 2019).............................................................11, 15

*Thales Visionix Inc. v. U.S.*,
    850 F.3d 1343 (Fed. Cir. 2017).........................................................................7, 8

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)..............................................................................11

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) ..........................................................................14

**Statutes**

35 U.S.C. § 101 ................................................................................................ *passim*

35 U.S.C. § 287 ...............................................................................................1, 2, 20

**Rules**

Rule 12(b)(6) .................................................................................................... *passim*

Defendant Google LLC ("Google") moves to dismiss Plaintiff CardiacSense LTD.'s ("CardiacSense") Complaint (Dkt. 1), pursuant to Rule 12(b)(6), on four grounds. First, the Court should dismiss the Complaint in its entirety, with prejudice, because the asserted claims are patent ineligible under 35 U.S.C. § 101. Second, the Court should dismiss CardiacSense's request for an injunction because CardiacSense's pleading lacks the specificity required by the *Twombly/Iqbal* standard. Third, the Court should dismiss CardiacSense's indirect infringement claims because CardiacSense's conclusory allegations also fail to meet *Twombly/Iqbal*.[1] Fourth, CardiacSense failed to plead compliance with 35 U.S.C. § 287 and its claim for pre-suit damages should thus be dismissed.

CardiacSense asserts that Google infringes U.S. Patent No. 7,990,998 (the "'998 patent"), which is directed to a personal device that merely collects information with conventional sensors, analyzes it with a conventional computer processor, and, in some cases, transmits it to a conventional computer and/or presents/displays it with a conventional presentation unit or computer monitor. Unfortunately, the '998 patent issued years before the Supreme Court reined in patents covering such broad, abstract concepts implemented by conventional computer components in *Alice*, because the '998 patent reflects precisely the type of "do-it-on-a-computer" claims that *Alice* explained are patent-ineligible under 35 U.S.C. § 101. Put simply, the claims of the '998 patent describe known uses of conventional motion sensors to collect movement data, known uses of a conventional computer processor to analyze and transmit the movement data, and known uses of a conventional presentation unit or computer monitor to present/display the result of the analysis. But the claims do not recite ***any*** particular manner of collecting, analyzing,

---

[1] CardiacSense has agreed to withdraw its claims for pre-suit indirect infringement, as set forth in the concurrently filed notice. Accordingly, this Motion addresses CardiacSense's claims for post-suit indirect infringement only.

transmitting, presenting, or displaying information, much less an ***inventive*** manner. Instead, they purport to capture all ways of achieving the desired result. Thus, dismissal of the Complaint, in its entirety and with prejudice, is warranted.

Further, despite CardiacSense's threadbare infringement allegations, it seeks sweeping relief under multiple theories. For example, CardiacSense seeks a permanent injunction without pleading any facts about its own commercial activities or the market effects of an injunction that would plausibly entitle it to any form of equitable relief. Moreover, CardiacSense alleges two theories of indirect infringement—inducement and contributory—and merely recites the elements of a cause of action with no factual allegations in support. Finally, CardiacSense was required to plead compliance with 35 U.S.C. § 287 to make a viable claim for pre-suit damages, but failed to do so. Thus, CardiacSense's request for an injunction, claims for indirect infringement, and pre-suit damages all fail as a matter of law, and the Court should dismiss them as well.

## I.    GROUND #1: THE '998 PATENT IS INELIGIBLE UNDER 35 U.S.C. § 101.

CardiacSense's Complaint should be dismissed because all purportedly asserted claims of the '998 patent are patent-ineligible, and therefore unenforceable, under 35 U.S.C. § 101.

### A.    The Two-Step Legal Test For Patent Eligibility Under 35 U.S.C. § 101.

In *Alice*, the Supreme Court set forth a two-step test for patent eligibility under 35 U.S.C. § 101. At step one, the Court examines the focus of the asserted claim to determine whether it is directed to an abstract idea. *Alice Corp Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216–218 (2014). At step two, the Court determines whether the claim contains an inventive concept that "'transform[s] the nature of the claim' into a patent-eligible application" by ensuring it amounts to "'significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217–18 (alteration in original) (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 73, 78 (2012)). Specifically, an inventive concept requires "more than performance of 'well-understood,

2

routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014) (alteration in original) (quoting *Alice*, 573 U.S. at 225). Claims directed to an abstract idea that contain no inventive concept are ineligible under 35 U.S.C. § 101. *Alice*, 573 U.S. at 227.

*Alice*'s two-step test is a question of law that can be resolved via Rule 12(b)(6) "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

### B.    The Asserted Claims Are Directed To Patent Ineligible Subject Matter Under 35 U.S.C. § 101.

The '998 patent claims are focused on a personal device with generic, conventional components that are functionally claimed to collect and analyze data relating to movement of a body part, and present/display the results. As such, the claims are directed to the abstract idea of collecting, analyzing, transmitting, and presenting/displaying information. And because the claims of the '998 patent involve no more than the performance of these well-understood activities using generic, conventional computer components in their natural, ordered combination, they contain no inventive concept. Thus, the claims of the '998 patent are patent ineligible.

### 1.    Background Of The '998 Patent And Representative Claim 12.

The '998 patent, titled "Training And Instructing Support Device," purports to relate to "methods, systems and devices for monitoring activities performed by a person, and for allowing communication with respect thereto." *See* '998 patent at 1:10–15. In particular, the patent describes equipping a device such as a watch with conventional motion sensors that sense data relating to motion, and a processor that makes calculations about that motion. *Id.*, cl. 12, 8:24–33, 10:23–24, 11:19–23. The patent further describes a presentation unit for presenting the data, and transmitting the calculated data to a computer including a monitor for displaying the data. *Id.*, cl.

3

12, 9:2–14, 11:49–56, 13:10–14.

While the Complaint only analyzes claim 1, CardiacSense purports to assert claims 1–7, 10, and 12–16 of the '998 patent.  *See* Dkt. 1, 20, Exs. B–D.  Google primarily analyzes claim 12 below, because it generally contains all elements of the other asserted independent claims (claims 1 and 10) and the asserted dependent claims do not add any substantive requirements; they merely claim more specific types of the conventional components that are included in the independent claims.  Claim 12 is thus representative of all asserted claims for purposes of the § 101 analysis.[2] The Federal Circuit has explained that, for purposes of evaluating whether a patent is invalid under Section 101, it is "unnecessary" to separately address each claim of an asserted patent where the claims are all "substantially similar in that they recite little more than the same abstract idea." *Content Extraction*, 776 F.3d at 1348.  The result of the *Alice* inquiry is the same, however, regardless of which asserted claim is analyzed.

### 2. The Asserted Claims Are Directed To The Abstract Idea Of Collecting, Analyzing, Transmitting, And Presenting/Displaying Information.

The asserted claims of the '998 patent are directed to the abstract idea of collecting, analyzing, transmitting, and presenting/displaying information.

---

[2] Google is not the first defendant to recognize that the '998 patent is drawn to patent-ineligible subject matter.  Defendant Coros Wearables made similar arguments in a co-pending case.  In response, CardiacSense argued that Claim 1 was not representative because other independent claims "include further patent-eligible elements."  Ex. 1, 14.  While Google does not necessarily agree, to alleviate that concern, Google selected claim 12 as representative since it generally includes all elements of the other asserted claims.  In any event, the claims are substantially similar and are all generally directed to collecting, analyzing, transmitting, and presenting/displaying information.  CardiacSense itself has argued that the '998 patent is "directed to a personal device having specific recited components and specific functional interactions for ***measuring, processing analyzing and displaying data*** ...," which is nearly identical to Google's characterization of the abstract idea here.  *See id.* at 2 (emphasis added).  Thus, analyzing representative claim 12 is proper.  *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017).

In analyzing *Alice* step one, the Court must look to the focus of the asserted claims. *Alice*, 573 U.S. at 216–18. Representative claim 12 recites a "personal device" with five generic, conventional components: (1) "a sensing unit" comprising conventional sensors (*e.g.*, "accelerometer means, a compass and optionally gyroscope means"), (2) "means for attaching the sensing unit to said body part," (3) "a processor," (4) "a presentation unit," and (5) "a computer . . . having a monitor." *Id.*, cl. 12.[3]

Claim 12 does not provide any specificity as to how these components collect, analyze, transmit, or present/display the information. Instead, these components expressly perform "result-focused, functional" tasks, which confirms they are directed to an abstract idea. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016); *see also* '998 patent, cl. 12. For example, the "sensing unit" is functionally "adapted to repeatedly measure, during said training activity, parameters associated with the movement of said body part." '998 patent, cl. 12. The "means for attaching the sensing unit to said body part" performs just that function. *Id.* The "processor" is functionally "adapted to receive from the sensing unit said parameters, and to calculate based thereon, data indicative of said training activity." *Id.* The "presentation unit" is functionally "adapted to present to the trainee at least said data or training instructions based on said data." *Id.* Finally, the "computer" is functionally "adapted for being located at a location spaced from said processor and for wirelessly receiving the data from said device" and its "monitor" is functionally "for displaying to a user of said computer said data or information derived therefrom." *Id.* To the extent the specification provides any specificity missing from the claims, it confirms "that the present invention may be practiced without these specific details." *Id.*, 6:54–58. Accordingly, the focus of the claims is the abstract idea of collecting, analyzing,

---

[3] Independent claims 1 and 10 include a similar subset of these elements. '998 patent, cls. 1, 10.

transmitting, and presenting/displaying information.

The Federal Circuit has made it clear, however, that claims focused on using sensors to collect data and a processor to analyze that data, and then transmitting the results of the analysis, are directed to the abstract idea of "'gathering, processing, and transmitting information.'" *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 536 (Fed. Cir. 2021) (citation omitted). The representative claim in *iLife* is similar to the claims of the '998 patent. The table below presents claim 1 in *iLife* side-by-side with claim 12 of the '998 patent, color-coded to correlate their common abstract idea of collecting, analyzing, and transmitting information—in short, the green elements involve collecting data, the purple elements involve analyzing data, and the orange elements involve transmitting the results of the analysis. Indeed, the claims are so similar as to commonly specify the blue requirement of associating/attaching the sensor to the user's body.[4]

| *iLife* Representative Claim 1 | '998 Patent Representative Claim 12 |
|---|---|
| 1. A system within a communications device capable of evaluating movement of a body relative to an environment, said system comprising:<br><br>   a sensor, associable with said body, that senses dynamic and static accelerative phenomena of said body, and<br><br>   a processor, associated with said sensor, that processes said sensed dynamic and static accelerative phenomena as a function of at least one accelerative event characteristic to thereby determine whether said evaluated | 12. A personal device for measuring a training activity of a trainee having a body part which moves during said training activity, this movement at least partially defining said training activity, said device comprising:<br><br>   (a) a sensing unit adapted to repeatedly measure, during said training activity, parameters associated with the movement of said body part, and wherein said sensing unit comprising [*sic*] at least accelerometer means, a compass and optionally gyroscope means;<br><br>   (b) means for attaching the sensing unit to said body part<br><br>   (c) a processor adapted to receive from the sensing unit said parameters, and to calculate based thereon, data indicative of said training activity; |

---

[4] Moreover, '998 patent cl. 1. further illustrates the similarities: just as the *iLife* claim specifies that the sensor "senses dynamic and static accelerative phenomena of said body," so too '998 patent claim 1 specifies that the "sensing unit" includes an accelerometer that "measure[s] linear acceleration" and gyroscope that "measure[s] angular acceleration." '998 patent, cl. 1.

| body movement is within environmental tolerance<br><br>wherein said processor generates tolerance indicia in response to said determination; and<br><br>wherein said communication device transmits said tolerance indicia.<br><br>*iLife*, 839 F. App'x at 535–36. | (d) a presentation unit adapted to present to the trainee at least said data or training instructions based on said data; and<br><br>(e) a computer adapted for being located at a location spaced from said processor and for wirelessly receiving the data from said device, and having a monitor for displaying to a user of said computer said data or information derived therefrom.<br><br>'998 patent, cl. 12. |

As the *iLife* court explained:

> Claim 1 recites a motion sensor system that evaluates and communicates the relative movement of a body using static and dynamic acceleration information collected from sensors. Failing to provide any concrete detail for performing the associated functions, however, claim 1 merely amounts to a system capable of sensing information, processing the collected information, and transmitting processed information.

*iLife*, 839 F. App'x at 536.

Like the claims in *iLife*, the '998 patent claims fail to provide any concrete detail for performing the associated functions. In *iLife,* the Federal Circuit expressly noted that a system "that evaluates and communicates the relative movement of a body" using the output of the sensors "merely amounts to a system capable of . . . processing the collected information[] and transmitting processed information." 839 F. App'x at 536. That is also the most that the claims of the '998 patent require—a sensing unit for collecting information, a processor for analyzing it, and the capability of transmitting the result from the processor to a computer. *See, e.g.*,'998 patent, cl. 12. Thus, like in *iLife*, the claims of the '998 patent are directed to an abstract idea because they are focused on a system that merely gathers, analyzes, and transmits information.

In its parallel case against Coros, CardiacSense argued that the claims are not directed to an abstract idea, claiming they recite a physical system that incorporates sensors and improved techniques for using raw sensor data like the claims found patent-eligible in *Thales Visionix Inc.*

*v. U.S.*, 850 F.3d 1343 (Fed. Cir. 2017).  However, "in *Thales*, the claims recited a particular configuration of inertial sensors and a specific choice of reference frame in order to more accurately calculate position and orientation of an object on a moving platform."  *iLife*, 839 F. App'x at 537 (citation omitted).  By contrast, the *iLife* claim was patent-ineligible because it "is not focused on a specific means or method to improve motion sensor systems, nor is it directed to a specific physical configuration of sensors.  It merely recites a motion sensor system that evaluates movement of a body using static and dynamic acceleration information."  *Id.*  The Federal Circuit's holding applies with equal force here.  The claims of the '998 Patent are not focused on improving motion sensor systems nor directed to a specific physical configuration of sensors.  Instead, just as in *iLife*, the '998 Patent claims the use of generic sensors to capture body movement—a "sensing unit" comprising an off-the-shelf accelerometer, compass, and gyroscope, and a "processor" that performs conventional, prior art calculations on the collected data.  *See, e.g.*, '998 Patent, cls. 1, 10, 12.  Thus, just as in *iLife*, the '998 Patent claims nothing more than the abstract idea of "sensing information, processing the collected information, and transmitting processed information."  *iLife*, 839 F. App'x at 536.

Plaintiff may argue that the claim in *iLife* lacks the capability to present/display data, as in some asserted claims of the '998 patent including representative claim 12.  But, the Federal Circuit has already held that does not save the '998 patent at *Alice* step one; rather, claims focused on merely collecting, analyzing, and displaying information are also directed to an abstract idea.  *See, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1354.  The table below presents claim 12 in *Electric Power Group* side-by-side with claim 12 of the '998 patent, color-coded to correlate their common abstract idea of collecting, analyzing, and displaying information—in short, the green elements involve collecting data, the purple elements involve analyzing data, and the red elements involve

presenting and displaying the results of the analysis.

| ***Electric Power Group* Representative Claim 12** | **'998 Patent Representative Claim 12** |
|---|---|
| 12. A method of detecting events on an inter-connected electric power grid in real time over a wide area and automatically analyzing the events on the interconnected electric power grid, the method comprising:<br><br>receiving data from other power system data sources, the other power system data sources comprising at least one of transmission maps, power plant locations, EMS/SCADA systems;<br><br>receiving data from a plurality of non-grid data sources;<br><br>detecting and analyzing events in real-time from the plurality of data streams from the wide area based on at least one of limits, sensitivities and rates of change for one or more measurements from the data streams and dynamic stability metrics derived from analysis of the measurements from the data streams including at least one of frequency instability, voltages, power flows, phase angles, damping, and oscillation modes, derived from the phasor measurements and the other power system data sources in which the metrics are indicative of events, grid stress, and/or grid instability, over the wide area;<br><br>displaying the event analysis results and diagnoses of events and associated ones of the metrics from different categories of data and the derived metrics in visuals, tables, charts, or combinations thereof, the data comprising at least one of monitoring data, tracking data, historical data, prediction data, and summary data;<br><br>displaying concurrent visualization of measurements from the data streams and the dynamic stability metrics directed to the wide area of the interconnected electric power grid;<br><br>accumulating and updating the measurements from the data streams and the dynamic stability metrics, grid data, and non-grid data in real time as to wide area and local area portions of the interconnected electric power grid; and<br><br>deriving a composite indicator of reliability that is an indicator of power grid vulnerability and is derived from a combination of one or more real time measurements or | 12. A personal device for measuring a training activity of a trainee having a body part which moves during said training activity, this movement at least partially defining said training activity, said device comprising:<br><br>(a) a sensing unit adapted to repeatedly measure, during said training activity, parameters associated with the movement of said body part, and wherein said sensing unit comprising [*sic*] at least accelerometer means, a compass and optionally gyroscope means;<br><br>(b) means for attaching the sensing unit to said body part<br><br>(c) a processor adapted to receive from the sensing unit said parameters, and to calculate based thereon, data indicative of said training activity;<br><br>(d) a presentation unit adapted to present to the trainee at least said data or training instructions based on said data; and<br><br>(e) a computer adapted for being located at a location spaced from said processor and for wirelessly receiving the data from said device, and having a monitor for displaying to a user of said |

| | |
|---|---|
| computations of measurements from the data streams and the dynamic stability metrics covering the wide area as well as non-power grid data received from the non-grid data source. | computer said data or information derived therefrom. |
| *Elec. Power Grp.*, 830 F.3d at 1351–52. | '998 patent, cl. 12. |

In *Electric Power Group*, the claims focused on gathering and analyzing power grid information, using it to calculate a reliability indicator, and displaying the indicator. 830 F.3d at 1352. The Federal Circuit explained that "[i]nformation as such is an intangible" and "collecting information, including when limited to particular content" is "within the realm of abstract ideas." *Id.* at 1353 (citation omitted). Like the claims in *Electric Power Group*, the '998 patent claims require receiving a plurality of data streams comprising measurements of a particular content (here, motion data from a plurality of motion sensors). *Compare id.* at 1352 *with* '998 patent, cl. 12. Also like the claims in *Electric Power Group*, which accumulated and updated measurements to derive a composite indicator of reliability, the '998 patent claims require "a processor adapted to receive from the sensing unit said parameters" and "to calculate based thereon, data indicative of said training activity." *Compare Elec. Power Grp.*, 830 F.3d at 1352 *with* '998 patent, cl. 12. Finally, like the claims in *Electric Power Group* that displayed event analysis results and concurrent visualization of measurements from the data streams, the '998 patent claims require "a presentation unit adapted to present to the trainee at least said data or training instructions based on said data" and "a computer . . . having a monitor for displaying to a user of said computer said data or information derived therefrom." *Compare Elec. Power Grp.*, 830 F.3d at 1352 *with* '998 patent, cl. 12.

The Federal Circuit is not alone. District courts similarly and routinely find that systems made up of generic sensors are directed to an abstract idea. For example, in *Cambridge Mobile Telematics, Inc. v. Zendrive, Inc.*, a claim which "neither focuses on a novel and specific sensor arrangement nor captures specific techniques that address inaccuracies related to unfixed sensors"

was directed to abstract idea. No. 22-1260-RGA, 2023 WL 6295338, at *5–6 (D. Del. Sept. 27, 2023). Similarly, in *Philips N. Am. LLC v. Fitbit LLC*, claims focused on using generic components for collecting exercise-related data, "'receiving' data concerning the physiologic status of the subject and the amount of exercise performed by the subject," analyzing the data, and showing the results were directed to the abstract idea of "collection, analysis, and presentation of information." 626 F. Supp. 3d 292, 301 (D. Mass. 2022). As another example, in *Specialized Monitoring Sols., LLC v. ADT LLC*, claims requiring "'detecting a signal event'" and "set forth in functional terms" were "not tied to any specific and novel type of technology for performing those functions" and, thus, directed to an abstract idea. 367 F. Supp. 3d 575, 582 (E.D. Tex. 2019). Here, the '998 patent likewise claims generic components in functional terms (*e.g.*, "a sensing unit adapted to repeatedly measure, during said training activity, parameters associated with the movement of said body part") that collect and analyze information but are not tied to any novel technology for performing those functions. Even to the extent the claims are alleged to improve upon data collection, "merely improv[ing] or 'enhanc[ing]' an abstract idea" is still an abstract idea. *Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 584–85 (W.D. Tex. 2021). Accordingly, at *Alice* step one, the claims of the '998 patent are directed to the abstract idea of collecting, analyzing, transmitting, and presenting/displaying information.

### 3. The '998 Patent Recites No Inventive Concept.

The '998 patent claims do not recite an inventive concept sufficient to transform them into "a patent-eligible application." *Alice*, 573 U.S. at 217.

"[M]ere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of well-understood, routine, conventional activit[ies] previously known to the industry." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (quoting

*Alice*, 573 U.S. at 225 (alteration in original) (internal quotation marks omitted)).

Although the '998 patent claims tangible, albeit conventional, components—*e.g.*, an accelerometer, compass, gyroscope, processor, computer, and monitor—the claims merely recite using those conventional components in well-understood, conventional ways. *See, e.g.*, '998 patent, cl. 12. Confirming these components do not supply an inventive concept, the '998 patent claims them in functional terms, as described above. *See* '998 patent, cl. 12.

Tellingly, the specification itself also repeatedly and clearly indicates the known and conventional nature of these components and their functions. For example, sensors incorporating accelerometers and other electronic components were well-understood at the time of the invention. *See* '998 patent, 1:19–37 (describing devices measuring swimming activity, including by using an accelerometer). The specification likewise confirms gyroscopes and compasses were well-known at the time of the invention. *See id.*, 10:30–40 (explaining basic function of a gyroscope that "measure[s] angular acceleration . . . around the three orthogonal axes, i.e, with respect to yaw, pitch and roll"), 10:50–59 (explaining basic function of a compass that provides "measurements . . . relative to the earth electromagnetic field"). The specification further explains that the processor, computer, and monitor were well-known and generic, and further confirms as much by not describing them in any detail. *See id.*, 7:6–35 ("The processes/devices (or counterpart terms specified above) and displays presented herein are not inherently related to any particular computer or other apparatus, unless specifically stated otherwise. Various general purpose systems may be used with programs in accordance with the teachings herein, or it may prove convenient to construct a more specialized apparatus to perform the desired method."). Likewise, wireless data transmission was well-known. *See id.*, 1:66–2:14 (describing computer adapted to wireless transmission), 2:53–3:5 (describing use of undescribed and unspecified "wireless communication

12

protocol" for wireless data transmission).[5]

Furthermore, to the extent the specification purportedly recites details that go beyond the performance of well-understood, routine, conventional activities, those details are not claimed and the specification unambiguously states "that the present invention may be practiced without these specific details." '998 patent, 6:54–58.  In fact, however, Google cannot find any description in the specification of how or why the claimed invention allegedly improves on the prior art.  And even if one exists, where specific improvements from the specification are not claimed, there is no factual dispute precluding a finding of patent ineligibility.  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).  The Complaint also fails to set forth ***any*** allegations suggesting how or why the asserted claims represent a specific improvement over the prior art, so dismissal with prejudice in the context of Rule 12(b)(6) is appropriate.  *SAP Am., Inc.*, 898 F.3d at 1166–67.

Again, Federal Circuit case law confirms the correct result is Section 101 ineligibility.  The Federal Circuit has repeatedly found that using standard sensing components in conventional ways does not provide an inventive concept.  For example, in *iLife*, the Federal Circuit rejected the patentee's argument that "configuring an acceleration-based sensor and processor to detect and distinguish body movement as a function of both dynamic and static acceleration is an inventive concept."  839 F. App'x at 538.  Instead, the Federal Circuit found that "sensors (*e.g.*, accelerometers) 'that measure both static and dynamic acceleration [were] known.'"  *Id.*[6]

---

[5] The specification also indicates the functionally claimed "presentation unit" and "vibrating" unit/element of the independent claims were well-known, because it does not even purport to describe or teach a person of skill in the art how to make or implement those functionally claimed components.  *See generally* '998 patent.

[6] The priority date of the asserted patent in *iLife* was September 15, 1999.  *Nintendo of Am., Inc. v. iLife Techs., Inc.*, IPR2015-00109, Paper No. 40, at 22 (PTAB 2016).  This predates the earliest possible priority date of the '998 patent—September 11, 2006.  *See* '998 patent at 1.  Thus, the same generic sensors that the Federal Circuit found "were known" at the time of the *iLife* patent,

(alteration in original). Moreover, as noted above, the '998 patent similarly admits that accelerometers for tracking an athlete's movements were known in the prior art. *See, e.g.*, '998 patent at 1:22–28. Similarly, in *Automated Tracking Solutions, LLC v. Coca-Cola Co.*, the Federal Circuit held that claims "reciting uses of RFID system components recognized in the specification to be routine and conventional" did not contain an inventive concept when "[t]he claims do not use these conventional RFID components in a non-conventional combination or arrangement." 723 F. App'x 989, 995 (Fed. Cir. 2018).

More broadly, in fact, the '998 patent does not claim to use *any of the conventional claimed components* in an unconventional way—either by themselves or as an ordered combination. Rather, as described above, the claims use these conventional components for their conventional functions. Furthermore, the ordered combination of elements is conventional as well—in fact, it is dictated by the claimed functions. In particular, the sensing unit must collect information before the processor can receive and analyze the information, and the processor must analyze the information before the results of the analysis can be transmitted, presented, or displayed. *See, e.g.*, '998 patent, cl. 12; *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1366 (Fed. Cir. 2023) ("So too here, the asserted claims are organized in an expected way—receiving user information, asking that user questions, receiving answers, identifying and displaying a match based on those answers."). Thus, *Electric Power Group* is again on-point, and confirms that the '998 patent claims do not contain any inventive concept:

> The claims in this case do not even require a new source or type of information, or new techniques for analyzing it. As a result, they do not require an arguably inventive set of components or methods, such as measurement devices or techniques, that would generate new data. They do not invoke any assertedly inventive

including accelerometers that measure both static and dynamic acceleration, were also known at the later priority date of the '998 patent.

> programming.  Merely requiring the selection and manipulation of
> information . . . by itself does not transform the otherwise-abstract
> processes of information collection and analysis.

830 F.3d at 1355 (citations omitted); *see also, e.g.*, *Specialized Monitoring*, 367 F. Supp. 3d at 588

("The asserted claims recite no arguably inventive set of components, devices, techniques, or

innovative programming . . . . [T]he claims merely call for performance of the claimed information

collection, analysis, and display functions on a set of generic computer components and display

devices performing conventional tasks for which they were designed.  Thus, like the claims in

*Electric Power Group*, the asserted claims in this case do not recite an inventive concept.").

Therefore, the '998 patent claims do not contain an inventive concept.

### 4.    Conclusion

For these reasons, the '998 asserted claims are patent-ineligible, and Google respectfully

requests the Court dismiss with prejudice because amendment is futile.

## II.    GROUND #2: THE COURT SHOULD DISMISS CARDIACSENSE'S REQUEST FOR AN INJUNCTION.

CardiacSense's request for a permanent injunction should be dismissed, because it fails to

plausibly allege entitlement to that equitable relief.

### A.    The *Twombly/Iqbal* Pleading Standard.

A pleading must set forth facts which, if accepted as true, would "state a claim to relief that

is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially

plausible only "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  To survive a Rule 12(b)(6) motion, "a plaintiff's obligation to provide

the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic

recitation of a cause of action's elements will not do."  *Twombly*, 550 U.S. at 545 (alteration in

original) (internal quotation marks omitted).

   **B.    CardiacSense Did Not Plead A Single Fact Supporting An Injunction.**

   CardiacSense seeks a permanent injunction in this case.  Dkt. 1, Prayer for Relief at B.  The

Complaint, however, alleges no specific facts supporting that request.  CardiacSense's request for

an injunction—unsupported by ***any*** factual allegations that would plausibly show entitlement to

such relief—fails to satisfy the *Twombly/Iqbal* pleading standard and should be dismissed.

   To obtain a permanent injunction, CardiacSense must show: "(1) that it has suffered an

irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to

compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved

by a permanent injunction."  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  "A

claim for injunctive relief can thus be dismissed when 'no facts are alleged in the Complaint that

support an award of . . . a permanent injunction.'"  *Lionra Techs. Ltd. v. Apple Inc.*, No. 6:22-cv-

351-ADA, 2023 WL 11915728, at *5 (W.D. Tex. May 10, 2023) (alteration in original) (quoting

*M & C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713, at *6 (S.D.

Tex. July 31, 2018)).

   CardiacSense failed to allege any facts that would plausibly entitle it to a permanent

injunction.  Indeed, it failed to allege any facts that would satisfy any single one of the four

essential elements it must prove to obtain a permanent injunction, much less all four.  The

Complaint alleges no facts demonstrating CardiacSense suffered an irreparable injury.  The

Complaint alleges no facts demonstrating that remedies at law, such as money damages, are

inadequate to compensate for CardiacSense's purported injury.[7]  And the Complaint alleges no facts regarding the balance of hardships between the parties or the public interest in an injunction. *See generally* Dkt. 1.  Indeed, the Complaint's only allegation about CardiacSense's activity is that it "is the owner of the entire right, title, and interest in the '998 patent."  *Id.*, ¶ 12.  That assertion fails to plausibly show CardiacSense is or could ever be entitled to equitable relief, because mere patent ownership is insufficient to support an injunction as a matter of law; *eBay* rejected the presumption of irreparable harm in cases of patent infringement.  *eBay*, 547 U.S. at 392 ("[I]njunctive relief may issue only in accordance with the principles of equity." (internal quotation marks omitted)).

It is appropriate for a court to dismiss a plaintiff's request for an injunction under Rule 12(b)(6) when the complaint lacks supporting factual allegations.  *See, e.g.*, *M & C Innovations, LLC*, 2018 WL 4620713, at *6 (dismissing request for injunction where pleadings did not "raise[] any indication that . . . a permanent injunction might eventually be appropriate"); *Lionra Techs. Ltd.*, 2023 WL 11915728, at *5 ("A complaint pleading injunctive relief must be stricken where, as here, the complaint does not contain any factual allegations that raise[] any indication that . . . a permanent injunction might eventually be appropriate." (quoting *M & C Innovations, LLC*) (internal quotation marks omitted)).  Therefore, the Court should dismiss CardiacSense's request for a permanent injunction, both because it is not plausible under the *Twombly/Iqbal* standards, and because dismissal is in the interests of judicial and party efficiency.  *See M & C Innovations*, 2018 WL 4620713 at *6 ("The interests of judicial efficiency are best served by dismissing MCI's unfounded prayers for relief now, 'at the point of minimum expenditure of time and money by the

---

[7] To the contrary, the Complaint alleges that CardiacSense "has suffered and will continue to suffer **damages**."  Dkt. 1, 31, 35 (emphasis added).

parties and the court.'" (quoting *Twombly*, 550 U.S. at 558)).

## III.    GROUND #3: THE COURT SHOULD DISMISS CARDIACSENSE'S INDIRECT INFRINGEMENT CLAIMS.

CardiacSense's formulaic indirect infringement claims—including claims of both induced and contributory infringement—fail to allege facts that would render those claims plausible under the *Twombly/Iqbal* standard and should therefore also be dismissed.

### A.    Legal Standards For Pleading Indirect Infringement.

Claims for induced infringement require that the alleged infringer "possessed ***specific intent to encourage another's infringement***."  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (emphasis added) (citation omitted).  And claims for contributory infringement require a patentee to "plead facts that allow an inference that the components sold or offered for sale have ***no substantial non-infringing uses***."  *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012).

### B.    CardiacSense Failed To Plausibly Allege Indirect Infringement.

The Court should dismiss CardiacSense's inducement claim because the Complaint fails to plausibly allege Google's intent to induce infringement. Similarly, the Court should dismiss CardiacSense's contributory infringement claim because the Complaint fails to plausibly allege that the accused products are a material part of the invention and are not staple articles of commerce with no substantial non-infringing uses.

#### 1.    CardiacSense Failed To Allege Facts Showing Google's Intent To Induce Infringement.

CardiacSense does not allege any facts that would plausibly show Google intended for any party to infringe the '998 patent.  The conclusory allegation in the Complaint that Google "knowingly and intentionally actively aided, abetted and induced others to directly infringe" (Dkt. 1, 26) is insufficient as a matter of law to plausibly allege inducement because it sets forth no

factual content. *See Inhale, Inc v. Gravitron, LLC*, No. 1-18-CV-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) (conclusory assertion that the defendant "specifically intended another party to infringe the patent and knew of that other party's infringement . . . entirely lacks factual allegations of third-party infringement, and, therefore, fails to raise a plausible inference that Gravitron intended another party to infringe and knew of that party's infringement"); *see also Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, No. 1-14-CV-134-LY, 2015 WL 3513151, at *5 (W.D. Tex. Mar. 24, 2015) (dismissing inducement claims based on a "lack of inference-supporting facts and reliance on conclusory statements that merely mirror the elements of the cause of action"). Thus, the Court should dismiss CardiacSense's inducement allegations.

### 2. CardiacSense Failed To Allege Facts Showing The Accused Products Are A Material Part Of The Patented Invention And Not A Staple Article Of Commerce With No Substantial Non-Infringing Uses.

CardiacSense also does not allege any facts that would plausibly show that the accused products are a material part of the patented inventions and not a staple article of commerce with no substantial non-infringing uses.

CardiacSense merely makes the conclusory assertion that Google "suppl[ies] a material part of an infringing device, where the material part . . . is incapable of substantial noninfringing use." Dkt. 1, 15. Such assertions, however, are insufficient as a matter of law. *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-008876-ADA, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) ("[A]llegations that the products have no substantial noninfringing use . . . do not contain any facts, other than mere recitations of the elements, enough to lead to a plausible inference of any substantial non-infringing use." (citation omitted)). In addition, CardiacSense's assertion fails to identify the "material part" Google allegedly supplies.

Worse, CardiacSense's own claim charts reveal that the accused products ***have*** substantial noninfringing uses—*e.g.*, telling time and providing a virtual wallet, maps, and music controls, to

name a few. *See, e.g.*, Dkt. 1–2, 1. CardiacSense does not allege that any of those features infringe (*see* Dkt. 1), nor could it. Therefore, the Court should dismiss CardiacSense's contributory infringement claim in its entirety. *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d at 1339 ("As the amended complaints make clear, Appellees' products can be used to, inter alia, speed billing and driver settlement, or scan proof of delivery documents. . . . None of these tasks involves scanning bills-of-lading which are created prior to package pick-up. . . . Thus, the district court did not err when it concluded that the Appellees' products had substantial noninfringing uses. . . ." (citations omitted)).

## IV.    GROUND #4: THE COURT SHOULD DISMISS CARDIACSENSE'S PRE-SUIT DAMAGES CLAIM.

A threshold requirement for obtaining pre-suit damages is pleading compliance with 35 U.S.C. § 287 (the "marking statute"). *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) ("The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement."). CardiacSense failed to plead compliance with the marking statute yet apparently seeks pre-suit damages. *See* Dkt. 1, 31. Accordingly, the Complaint fails to state a claim for pre-suit damages, and CardiacSense's claims should be dismissed to the extent they seek such relief. *See Ortiz & Assocs. Consulting, LLC v. VIZIO, Inc.*, No. 3:23-CV-00791-N, 2023 WL 7184042, at *3 (N.D. Tex. Nov. 1, 2023) ("Ortiz failed to plead compliance in either its Original Complaint or First Amended Complaint. Therefore, Ortiz has failed to state a claim for pre-suit damages."); *Express Mobile, Inc. v. Liquid Web, LLC*, No. 1:18-CV-01177-RGA, 2019 WL 1596999, at *2 (D. Del. Apr. 15, 2019) (same).

## V.    CONCLUSION

For all of these reasons, Google respectfully requests that the Court grant this Motion in its entirety and dismiss the Complaint with prejudice.

Dated: February 17, 2025                                Respectfully submitted,

                                                        */ s/ Brian C. Banner*
                                                        Brian C. Banner (TX Bar No. 24059416)
                                                        bbanner@sgbfirm.com
                                                        SLAYDEN GRUBERT BEARD PLLC
                                                        401 Congress Ave., Suite 1650
                                                        Austin, Texas 78701
                                                        Telephone: 512-402-3569
                                                        Facsimile: 512-402-6865

                                                        Karim Oussayef (admitted *pro hac vice*)
                                                        koussayef@desmaraisllp.com
                                                        Carson Olsheski (admitted *pro hac vice*)
                                                        colsheski@desmaraisllp.com
                                                        DESMARAIS LLP
                                                        230 Park Avenue
                                                        New York, NY 10169
                                                        Telephone: 212-351-3400
                                                        Facsimile: 212-351-3401

                                                        David Shaw (admitted *pro hac vice*)
                                                        dshaw@desmaraisllp.com
                                                        DESMARAIS LLP
                                                        1899 Pennsylvania Avenue NW
                                                        Washington, DC 2006
                                                        Telephone: 202-451-4900
                                                        Facsimile: 202-451-4901

                                                        Marie Weisfeiler (admitted *pro hac vice*)
                                                        mweisfeiler@desmaraisllp.com
                                                        Kurt Fredrickson (admitted *pro hac vice*)
                                                        kfredrickson@desmaraisllp.com
                                                        DESMARAIS LLP
                                                        101 California Street
                                                        Suite 3000
                                                        San Francisco, CA 94111

                                                        ***Attorneys for Defendant Google LLC***